01-CV-00467-BR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEHR PROCESS CORPORATION,

        Plaintiff,

     v.

BULLIVANT HOUSER BAILEY, P.C.,
JOHNSON CHRISTIE ANDREWS &
SKINNER, P.S.; RICHARD L. MARTENS and
JANE DOE MARTENS and the marital
community thereof; and E. PENNOCK GHEEN
and JANE DOE GHEEN and the marital
community thereof,

        Defendants.

CASE NO. C01-0467C

ORDER

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Motion for Dismissal on the Pleadings (Dkt. No. 61). The Court has determined that oral argument is not necessary. Having carefully considered the papers filed in support of and in opposition to Defendants' Motion, the Court hereby GRANTS in PART and DENIES in PART the motion.

Plaintiff, pursuant to Local Rule CR 7(g), filed a timely surreply motion to strike (Dkt. No. 64). The Court hereby DENIES Plaintiff's surreply motion as MOOT.

ORDER – 1

1    II.    BACKGROUND

2        Plaintiff, Behr Process Corporation ("Behr"), brings this action for damages allegedly arising out

3    of attorney negligence, legal malpractice, and breach of fiduciary duties, and for treble damages under

4    Washington's Consumer Protection Act. Defendants, the law firm Bullivant Houser Bailey, P.C.

5    ("Bullivant Houser"), the law firm Johnson Christie Andrews & Skinner, P.S. ("Johnson Christie"),

6    attorney Richard L. Martens, and attorney E. Pennock Gheen, represented Behr in an underlying class

7    action suit which provides the basis for Behr's current allegations before this Court.

8        *A.    Trial court proceedings*

9        In *Smith v. Behr Process Corporation*, Grays Harbor Cause No. 98-2-00635-4, a class of

10    consumers sued Behr alleging damage from certain Behr wood coating products (*Smith* Compl. filed

11    May 29, 1998). Behr's insurers, American International Specialty Lines Insurance Company ("AISLIC")

12    and Zurich Insurance Co. ("Zurich") appointed Bullivant Houser to defend Behr in the *Smith* lawsuit.

13    Two years earlier, Bullivant Houser had represented Behr in *Truax v. Behr Process Corp.*, Grays Harbor

14    Cause No. 96-2-0737, which also alleged damages from the use of certain Behr wood coating products.

15    On January 19, 1999, AISLIC appointed Richard Martens and Johnson Christie to participate in Behr's

16    defense of the *Smith* lawsuit, culminating in Martens being designated as lead trial counsel and Gheen

17    and Bullivant Houser being instructed "not to perform any work in this case" unless so directed by

18    Zurich.[1] (Am. Compl. ¶¶ 9-10.)

19        On April 28, 2000, two years into the *Smith* action and three days before the trial was set to

20    begin, the *Smith* class deposed Robert Miller, the manager of Troy Chemical Corporation ("Troy"),

21    Behr's mildewcide supplier, and learned for the first time of tests that Troy had performed at Behr's

22    request. *Smith*, 54 P.3d at 671. These tests "showed a possible chemical incompatibility between the

23    mildewcide in Behr's coating products and other ingredients." *Id.* Miller's deposition also showed that

24    ———————————

25    [1]Defendants Gheen and Bullivant Houser answer that they disregarded this instruction. (Gheen and Bullivant Houser Answer ¶¶ 10.)

26    ORDER – 2

1  "Troy had reported the test results to Behr." *Id.* However, Behr had not disclosed the testing or the test

2  reports during discovery. *Id.*

3       The *Smith* class moved for sanctions against both Behr and its attorneys for these discovery

4  violations. After the class produced evidence "suggesting that Behr's counsel, not the corporation, was

5  responsible for the discovery violations," Behr's counsel moved to withdraw from the case because of

6  the potential conflict of interest. *Id.* at 677. In response, the class dropped their allegations against

7  Behr's counsel and ultimately withdrew all evidence related to the attorneys' actions. *Id.*

8       Behr asked to consult with independent counsel given what it still perceived to be a potential

9  conflict of interest, as it anticipated arguing that any misconduct on its part had been caused by its

10  counsel's negligence. *Id.* Specifically, Behr's general counsel wanted Evan Schwab, other counsel for

11  Behr, to contact Behr's president. However, Mr. Schwab was in the hospital receiving treatment for a

12  heart attack. Given these logistical problems and the fact that the *Smith* class had withdrawn their

13  motion against Behr's counsel, the trial court decided to proceed with the evidentiary hearing, but agreed

14  to terminate it if the conflict issue arose again. *Id.*

15       Behr did not raise the conflict issue again. On May 15, 2000, the trial court, after a three-day

16  evidentiary hearing on the class's motion for sanctions, entered a default judgment against Behr in the

17  *Smith* lawsuit finding that Behr had willfully and deliberately abused the discovery process. *Id.* at 671

18  (affirming trial court's decisions). After the default judgment was entered, the trial court granted the

19  class's motion to exclude evidence of the class members' failure to mitigate damages and sent the case

20  to the jury solely on the amount of damages. *Id.* at 671-672. The jury awarded damages ranging from

21  $14,454 to $87,818 to the class representatives and "adopted damage matrices setting forth damage

22  amounts for the represented class members." *Id.* at 672.

23       B.    *The Default Judgment*

24       The trial court determined that the nondisclosure of the tests performed by Troy constituted a

25  discovery violation meriting a harsh sanction because of the importance and significance of the

26  ORDER – 3

1    information involved. Judge Foscoe found that the disclosure of such information would have

2    "bolster[ed] the plaintiffs' case, . . . undermine[d] positions that the defendant ha[d] taken, . . .

3    suggest[ed] that the plaintiffs' problems may have a more particular cause, some chemical instability in

4    the product that was marketed by Behr, . . . cast doubt on the discovery that ha[d] gone on before, . . .

5    affect[ed] the work that the experts ha[d] done...." (*Smith* Trial Tr. at 5.) Judge Foscoe rejected Behr's

6    attempt to explain that "its institutional memory either forgot or that it failed to learn" of the information

7    and found that Behr's discovery violations were "willful and deliberate." (*Id.* at 11.)

8         The trial court was emphatic in its finding that Behr's conduct had been willful and deliberate. It

9    noted that the case was of tremendous significance to Behr, and that it was highly unlikely that "309

10   interrogatories [and] the 140-some-odd requests for production" wouldn't have jogged the necessary

11   memories. (*Id.* at 16.) In the trial court's opinion,

12        [u]nder the light of all of these circumstances, the notion that negligence or inadvertence
          was responsible here simply aren't believable. They're incredible explanations. I really
13        have to think that this case must mean something to Behr. There must be some
          knowledge in the laboratory about this case and its issues. . . . What I heard was not
14        evidence of an inadvertent omission, what I heard was overwhelming evidence of
          excusable [sic] and therefore willful and deliberate discovery violations that pervaded
15        issues that are central to this litigation.

16   (*Id.* at 17-19 *passim.*)

17        Judge Foscoe concluded that

18        [d]efault is the only viable exercise of discretion when you consider the multiple, again,
          serious prejudice that this has caused the plaintiffs, and when you consider the impacts of
19        the violations on this Trial Court, and on the administration of justice. I think a default is
          the only thing that I can do in this case.

20
     (*Id.* at 28-29.)
21
          C.    *Appellate court proceedings*
22
          On September 13, 2002, the Washington State Court of Appeals affirmed the trial court's rulings
23
     and found that the trial court had not abused its discretion either in proceeding with the evidentiary
24
     hearing without allowing Behr to find new counsel, or in imposing the default judgment. *Smith*, 54 P.3d
25

26   ORDER – 4

1  at 677. Specifically, the appellate court found that the record before it did not show that the trial court

2  had *refused* to allow Behr to consult independent counsel. It noted that Judge Foscoe had left the door

3  open to termination of the evidentiary hearing if the conflict of interest issue arose again. *Id.*

4        D.     *Current action*

5        Plaintiff now brings this action against Defendants, its attorneys in the *Smith* action, for

6  "damages arising out of the attorneys' negligence, legal malpractice, and breach of fiduciary duties, for

7  treble damages under Washington's Consumer Protection Act, and for attorney's fees and costs in

8  bringing this action." (Am. Compl. ¶ 1.) Plaintiff alleges, among other things, that any discovery

9  violations on its part were the result of Defendants' failure to apprise Behr of its discovery obligations.

10  Thus, Plaintiff alleges Defendants' omissions gave rise to the default judgment, which in turn is alleged

11  to have given rise to the damages award. Plaintiff contends that this damages award led to bad publicity,

12  which in turn allegedly gave rise to more class action suits, which allegedly expose Behr to "massive

13  claims for damages." (Am. Compl. ¶ 48.)

14        E.     *Surreply*

15        Plaintiff moved to strike: 1) certain references in Defendants' Reply Brief to Behr having had

16  independent counsel present at the *Smith* sanctions hearing; 2) Defendants' Notice of Clarification; and

17  3) an entire section of Defendants' Reply Brief in which Defendants included evidence regarding and

18  testimony of the Behr employee in charge of the discovery process. Because the Court does not rely on

19  those challenged portions of Defendants' briefing in making the following ruling, Plaintiff's Surreply

20  Motion to Strike is DENIED as MOOT.

21  III.   APPLICABLE LAW

22        A.     *Standard of review*

23        Defendants have filed a motion to dismiss on the pleadings pursuant to Fed. R. Civ. P. 12(c).

24  "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the

25  moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531 (9th Cir.

26  ORDER – 5

1   1999) (citing *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). This Court may grant a

2   judgment on the pleadings if "the moving party clearly establishes on the face of the pleadings that no

3   material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."

4   *Enron Oil Trading & Transp. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George*

5   *v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996) (citations omitted)). Judgment "may

6   only be granted when the pleadings show that it is 'beyond doubt that the plaintiff can prove no set of

7   facts in support of his claim which would entitle him to relief.'" *Enron*, 132 F.3d at 529 (citing *B.F.*

8   *Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996) (citations omitted)). Because the standards are so

9   similar, courts often discuss Fed. R. Civ. P. 12(b)(6) motions to dismiss for failure to state a claim when

10  confronted with a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. 5 James Wm. Moore et

11  al., *Moore's Federal Practice* ¶ 12.38 (3d ed. 2003) (referencing *Gleave v. Graham*, 954 F. Supp. 599,

12  605 (W.D.N.Y. 1997) (same standards govern motions under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ.

13  P. 12(c), so since courts may consider matters of judicial notice in former motion, court also may do so

14  in latter motion); *Menominee Indian Tribe of Wis. v. Thompson*, 943 F. Supp. 999, 1005 (W.D. Wis.

15  1996), *aff'd*, 161 F.3d 449 (7th Cir. 1998) (because standards are similar court treated defendants'

16  motions as Fed. R. Civ. P. 12(c) motions, but applied standards of Fed. R. Civ. P. 12(b)(6) motion)).

17          *B.    Applicable state law*

18          Because this issue is before this Court under diversity jurisdiction, the Court must look to

19  Washington state substantive law with respect to the claims before the Court. *See Erie R. Co. v.*

20  *Tompkins*, 304 U.S. 64 (1938). The full faith and credit statute, 28 U.S.C. § 1738, requires that state

21  judicial proceedings "shall have the same full faith and credit in every court within the United States...as

22  they have by law or usage in the courts of such State...from which they are taken." *Marrese v. Amer.*

23  *Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing *Kremer v. Chem. Constr. Corp.*, 456

24  U.S. 461, 481-482 (1982)). The parties are in agreement that Washington state law should be applied in

25  this case.

26  ORDER – 6

1    IV.    ANALYSIS

2          Defendants move to dismiss Plaintiff's claims on the pleadings pursuant to Rule 12(c) of the

3    Federal Rules of Civil Procedure. Defendants state two alternative grounds for such a dismissal. First,

4    Defendants argue that Plaintiff's claims are barred by collateral estoppel. In the alternative, Defendants

5    argue that as a matter of law, Behr cannot state a claim for legal malpractice because plaintiff-clients are

6    generally not allowed to recover damages that were caused by their own wrongful acts through legal

7    malpractice claims and that, in this case, Behr's willful and deliberate discovery violations are the sole

8    proximate cause of its damages. (Defs.' Mot. at 7-12.)

9          A.    *Collateral estoppel*

10              *1.    This court's use of the state court* Smith *decisions*

11          As a preliminary matter, Defendants argue that the Court may consider the Washington state

12    court *Smith* decisions, both at the trial and appellate levels, without converting Defendants' Motion to

13    Dismiss on the pleadings into a request for summary judgment under Fed. R. Civ. P. 56. (Defs.' Mot. at

14    6 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).) The *Van Buskirk* court affirmed the

15    district court's use of "incorporation by reference" and deemed it proper to consider television

16    broadcasts that formed the basis of the Complaint and were accepted as authentic by both parties. *Van*

17    *Buskirk*, 284 F.3d at 980. Plaintiff does not appear to dispute the *consideration* of the state court

18    decisions, only their preclusive effect, as Plaintiff itself cites to both decisions in its Amended Complaint

19    and did not attempt to convert the Defendants' Motion to Dismiss into a request for summary judgment.

20    (Am. Compl. ¶ 9, citing *Smith* trial court decision; *Id.* ¶ 13, citing *Smith* appellate court decision.)

21          Moreover, these decisions are matters of public record, well within the Court's scope of materials

22    to consider. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (commenting that the court may

23    consider matters of public record) (citing *Mack v. S. Bay Beer Distribs, Inc.*, 798 F.2d 1279, 1282 (9th

24    Cir. 1986); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (finding that, on motion to

25    dismiss, district court properly considered public court documents filed in earlier state court

26    ORDER – 7

1  proceedings).

2          2.     *Effect of collateral estoppel on Plaintiff's claims*

3        Defendants argue that the doctrine of collateral estoppel prohibits Behr from re-litigating whether

4  its sanctioned conduct was willful and deliberate. (Defs.' Mot. at 7.) Under Washington state's

5  collateral estoppel doctrine, the party seeking to use the doctrine to estop another party's claims has the

6  burden of showing the following four elements: (1) that the identical issue was decided in the prior

7  action; (2) that the prior action resulted in a final judgment on the merits; (3) that the party against whom

8  the plea is asserted was a party to or in privity with a party to the prior adjudication; and (4) that

9  application of the doctrine will not work an injustice on the party against whom the doctrine is to be

10 applied. *Reninger v. State Department of Corrections*, 951 P.2d 782, 788 (Wash. 1998).

11       Defendants seek to use the doctrine to preclude Plaintiff's present action for malpractice damages

12 against them. However, the issue before this Court is *not* identical to the issues before the state trial

13 court or the state appellate court. The parties do not dispute that the issue before the trial court was

14 whether *Behr's* conduct was willful and deliberate and thus subject to sanctions. The issues before the

15 appeals court were, in relevant part, whether the trial court's choice of default judgment was the

16 appropriate sanction, and whether the trial court judge had abused his discretion in proceeding with the

17 evidentiary hearing without requiring Behr to obtain new counsel. *Smith*, 54 P.3d at 675. The issue

18 before this Court is not whether *Behr's* sanctioned conduct was willful and deliberate, but whether

19 *Defendants'* acts or omissions gave rise to the discovery abuses for which Behr was sanctioned, leading

20 to Plaintiff's alleged damages. (Am. Compl. ¶¶ 53, 60-61; Pl.'s Opp'n at 11.) Because a different issue

21 is presented here, the *Smith* state court decisions have no preclusive effect on the case at bar.

22       However, this is not to say that collateral estoppel has *no* effect on the case at bar. While

23 Plaintiff's claims against Defendants may go forward, Plaintiff *is* precluded from re-litigating, in *this*

24 action, whether the trial court judge erred in proceeding with the sanctions hearings without requiring

25 that Behr obtain new counsel and whether the trial court judge arrived at the correct result. Behr's

26 ORDER – 8

1  argument relies heavily on its central contention that it did not have a full and fair chance to litigate the

2  issue of its misconduct *because* Judge Foscoe and/or Defendants did not permit them to do so. In effect,

3  Behr contends that had Judge Foscoe been presented with the evidence pertaining to Behr's attorneys'

4  potential misconduct, that he might have arrived at a different conclusion.

5      This portion of Behr's argument concentrates mainly on the last prong of the collateral estoppel

6  showing, namely that application of the doctrine would result in injustice. It is firmly established that in

7  Washington, "injustice" is "most firmly rooted in procedural unfairness." *Thompson v. Dep't of*

8  *Licensing*, 982 P.2d 601, 608 (Wash. 1999). In other words, "Washington courts look to whether the

9  parties to the earlier proceeding received a full and fair hearing on the issue in question." *Id.* (citing *In*

10  *re Marriage of Murphy*, 952 P.2d 624 (Wash. Ct. App. 1998). "Injustice" under this prong of the

11  inquiry "means more than that the prior decision was wrong." *State Farm Mut. Auto. Ins. Co. v. Avery*,

12  57 P.3d 300, 306 (Wash. Ct. App. 2002). Indeed, when forced to make a decision between validity and

13  finality of judgments, "modern judicial development has been to favor finality rather than validity." *In*

14  *re Marriage of Brown*, 653 P.2d 602, 603 (Wash. 1982). Therefore, to the extent that Plaintiff contends

15  that the state courts reached the *wrong* decision, this contention is not determinative in the collateral

16  estoppel analysis.

17      Moreover, the appellate court *Smith* opinion is more than adequate evidence of the fact that

18  Plaintiff has already had a full and fair chance to litigate the question of whether its conduct was willful

19  and deliberate and whether the trial court's findings were flawed by any procedural injustices, i.e.,

20  proceeding without requiring that Behr retain new counsel. The appellate court *Smith* proceedings were

21  also Plaintiff's opportunity to appeal (or re-litigate) the trial court's finding that Plaintiff's discovery

22  misconduct merited the imposition of the harshest sanction available, that of default judgment. The

23  Court notes, in passing, that Plaintiff was represented by new counsel in the appellate court proceedings.

24      For these reasons, the Court finds that the doctrine of collateral estoppel bars Plaintiff from re-

25  litigating whether its conduct was willful and deliberate and whether its inability to retain new counsel at

26  ORDER – 9

1  the time of the sanctions hearings before the trial court amounted to a less than full and fair chance to

2  litigate its own liability for the default judgment.  Plaintiff has already had an opportunity to litigate this

3  issue.  As the Court noted above, however, collateral estoppel does *not* bar Plaintiff from now claiming

4  that Defendants played a role, even a *vital* role in its discovery violations.

5         *B.     Behr's Claims for Legal Malpractice*

6        The Court has determined that the *Smith* state court decisions do not preclude Plaintiff from

7  bringing a different issue before this Court.  However, that does not mean that Plaintiff has stated valid

8  claims for legal malpractice upon which relief can be granted.  Plaintiff's complaint purports to state

9  three bases for a claim of legal malpractice: 1) that Defendants abdicated control and management of

10  Behr's defense in *Smith* to Behr's insurers; 2) that Defendants failed to adequately represent Behr in

11  discovery matters in *Smith*; and 3) that Defendants provided Behr with a grossly inadequate defense in

12  *Smith*.  (Am. Compl.)

13        In Washington, an ethical violation of the Rules of Professional Conduct cannot form the basis of

14  a Washington state legal malpractice claim.  *Hizey v. Carpenter*, 830 P.2d 646, 654 (Wash. 1992).

15  Rather, Washington law requires the showing of the following four elements to prove legal malpractice:

16  (1) the existence of an attorney-client relationship which gives rise to a duty of care on the part of the

17  attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to

18  the client; and (4) proximate causation between the attorney's breach of the duty and the damage

19  incurred.  *Id.* at 654.

20        In the case at bar, Plaintiff's claim for legal malpractice suffers from two fatal flaws: 1) Plaintiff

21  is barred from seeking recovery against their attorneys for damages caused by their own wrongful acts

22  and 2) Plaintiff fails to make an initial showing that *but for* Defendants' alleged malpractice, Plaintiff

23  would not have suffered the default judgment.

24        Washington state law has yet to address the issue of whether plaintiff-clients are barred from

25  seeking to recover damages that were caused by their own wrongful acts through legal malpractice

26  ORDER – 10

1   claims.  However, there are a number of jurisdictions which have found that even when an attorney has

2   *advised* a client to commit the fraudulent or unlawful act, the court will not allow a legal malpractice

3   claim to go forward.  *See, e.g., Pantely v. Garris, Garris & Garris, P.C.*, 447 N.W.2d 864 (Mich. Ct.

4   App. 1989) (determining that plaintiff-client admitted to knowingly committing perjury at the *advice of*

5   *her counsel)* (emphasis added); *Robins v. Lasky*, 462 N.E.2d 774 (Ill. Ct. App. 1984) (determining that

6   plaintiff-client admitted in complaint to have relocated to another state to avoid service of process, under

7   *advice of counsel)* (emphasis added).  There are also cases in which plaintiff-clients have been found to

8   have acted fraudulently and later alleged that their attorneys failed to inform them of their legal

9   obligations, which plaintiff-clients had alleged led to their fraudulent behavior.  *See, e.g., Trustees of the*

10  *AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782-783 (7th Cir. 2002) (affirming district court's barring

11  of a plaintiff-client's malpractice claim alleging that attorneys had failed to advise him of his duty to

12  notify his employer of a change in marital status, which plaintiff alleged caused his fraudulence in

13  retaining divorced wife on his employer's health plan); *Saks v. Sawtell, Goode, Davidson & Trojilo*, 880

14  S.W.2d 466 (Tex. Ct. App. 1994) (affirming trial court's granting of summary judgment to defendant-

15  attorneys when plaintiff-clients brought legal malpractice claim for failing to inform them of potential

16  criminal violations and liability after plaintiff-clients were convicted of bank fraud and conspiracy to

17  commit bank fraud).

18      In the case at bar, Plaintiff *itself* concedes that its misconduct was of a lesser degree than that in

19  the cases cited by Defendants.  The cases cited by Defendants stand for the proposition that plaintiff-

20  clients who have committed *graver* misdeeds *under advice of counsel* have still failed to state a claim

21  against their attorneys for legal malpractice.  In the case at bar, Plaintiff alleges only that Defendants

22  *failed to advise* Plaintiff of its discovery obligations.  Though Defendants' support is drawn from non-

23  Washington precedent, since Washington courts have yet to address this precise issue, the Court is

24  guided by other jurisdictions' refusals to find a claim of legal malpractice even where defendant-counsel

25  *deliberately advise* plaintiff-clients to commit *graver offenses*.  The Court finds that, in the case at bar,

26  ORDER – 11

1    Plaintiff has failed to state a claim with regard to the discovery violations in *Smith*.

2    Moreover, the Court finds that Plaintiff cannot show proximate cause, the fourth prong of the

3    legal malpractice showing, as a matter of law. Proximate cause contains two elements: cause in fact and

4    legal causation. *See City of Seattle v. Blume*, 947 P.2d 223, 227 (Wash. 1997). Cause in fact requires

5    the following determination: "whether the client would have fared better but for the attorney's

6    negligence." *Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S.*, 50 P.3d 306, 309 (Wash. Ct. App.

7    2002) (citing *Daugert v. Pappas*, 704 P.2d 600, 603 (Wash. 1985); *Brust v. Newton*, 852 P.2d 1092

8    (Wash. Ct. App. 1993). "Legal causation rests on policy considerations determining how far the

9    consequences of defendant's act should extend." *Blume*, 947 P.2d at 227. "It involves the question of

10   whether liability should attach as a matter of law, even if the proof establishes cause in fact." *Id.* In the

11   legal malpractice context, proximate cause is an issue for the trier of fact, "[u]nless the question involves

12   a pure matter of law, such as whether the client would have prevailed on a statute of limitations issue."

13   *Lavigne*, 50 P.3d at 309 (referencing *Brust*, 852 P.2d at 1095-1096). In *Sherry v. Dierks*, the

14   Washington Court of Appeals determined that "[t]o establish the element of proximate causation in a

15   legal malpractice action based on the claim of an attorney's failure to defend, the client must establish a

16   'suit within a suit' that if the action had been defended, the client would have prevailed or achieved a

17   better result in that action." 628 P.2d 1336, 1338 (Wash. Ct. App. 1981) (finding that client could not

18   bring malpractice action arising out of attorney's failure to defend allegedly resulting in a default

19   judgment against client, because client had not shown he had a defense in the underlying action), *rev.*

20   *denied*, 96 Wash. 2d. 1003 (1981).

21   The *Smith* trial court determined that a default judgment was appropriate given the "willfulness

22   of the violation" and "the centrality of the suppressed information." (Tr. at 28.) The Washington Court

23   of Appeals affirmed the trial court's decision, finding that the discovery violations *could not have*

24   resulted from a misunderstanding of the discovery violations. *Smith*, 54 P.3d at 678. Both state courts

25   were quite clear that the default judgment sanction was justified *on the basis of the discovery violations*

26   ORDER – 12

1   *on their own.* Thus, *even if* Defendants had been under a duty to inform Plaintiff of its discovery

2   obligations and omitted to perform that duty, that would not have changed the outcome of either *Smith*

3   court decisions. Moreover, due to the intensity of the state courts' focus on Behr's discovery violations,

4   there is absolutely no basis for speculation that Defendants' conduct, either in terms of hours or quality

5   of work, had *any* impact or could have had any impact whatsoever on the ultimate outcome. The *Smith*

6   court's ruling, affirmed by the appellate court, basing the default judgment *solely* on Behr's discovery

7   violations, forecloses the possibility of Plaintiff being able to make a showing that Defendants' conduct

8   was the proximate cause of the default judgment and the alleged damages that followed.

9       For these reasons, the Court finds that Plaintiff has failed, as a matter of law, to state a claim for

10  legal malpractice.

11      *C.    Behr's Consumer Protection Act claims*

12      In general, Washington law does not allow claims against attorneys under the Consumer

13  Protection Act ("CPA"), Wash. Rev. Code § 19.86.020 (2003). *Manteufel v. Safeco Ins. Co. of Am.*, 68

14  P.3d 1093, 1097 (Wash. Ct. App. 2003) (citing *Haberman v. Washington Pub. Power Supply Sys.*, 744

15  P.2d 1032 (Wash. 1984). However, there is an exception for claims based on the "entrepreneurial

16  aspects of legal practice," such as those relating to the pricing and billing of services, or the obtaining,

17  retention and dismissal of clients. *Eriks v. Denver*, 824 P.2d 1207, 1214 (Wash. 1992) (citing *Short v.*

18  *Demopolis*, 691 P.2d 163 (Wash. 1984).

19      In the case at bar, Plaintiff does indeed base its claim on the way Defendants "marketed their

20  services and accepted engagements" allegedly without informing Behr of their pre-existing duties to the

21  insurers. In *Eriks v. Denver*, the Washington supreme court found that the defendant's conduct only

22  violated the CPA if he failed to disclose an alleged conflict *for the purpose of obtaining clients or*

23  *increasing profits.* 824 P.2d at 1214. It went on to say that the determination of whether the defendant

24  acted for entrepreneurial purposes was a question of material fact. *Id.* In the case at bar, Plaintiff's

25  allegations can be read to include just such an allegation – namely that Defendants failed to disclose

26  ORDER – 13

1   their allegedly conflicting duties towards Behr and the insurers in furtherance of the recruitment and/or

2   retention of clients. Analysis of this allegation is a material fact, rendering Plaintiff's Consumer

3   Protection Act claim unsuitable for resolution at this juncture.

4        For these reasons, Plaintiff's claim against Defendants under the CPA must be allowed to

5   proceed.

6        *D.    Behr's claim for breach of fiduciary duties*

7        The Rules of Professional Conduct ("RPC") lay out the fiduciary duties owed by an attorney to

8   his or her client. Under Washington law, the question of whether an attorney's conduct violates the RPC

9   is a question of law. *Erik*, 824 P.2d at 1210. An attorney's fiduciary duty to a client arises from the

10  same rules of conduct governing representation of multiple parties with conflicting interests. *Id.* at

11  1210-11. A claim for breach of fiduciary duties is substantively different from a claim for legal

12  malpractice because it is, by its nature, rooted in the RPC.

13       The allegations made by Plaintiff, if true, would support a finding that Defendants had violated

14  the RPC and thus breached their fiduciary duties to Plaintiff. Therefore, Defendant is not entitled to

15  judgment on this claim as a matter of law.

16  V.   CONCLUSION

17       Consistent with the foregoing, the Court hereby GRANTS in PART and DENIES in PART

18  Defendants' Motion for Dismissal on the Pleadings Under Fed. R. Civ. P. 12(c). Plaintiff's cause of

19  action for legal malpractice is DISMISSED. Plaintiff's remaining causes of action may proceed.

20       SO ORDERED this _____ day of February, 2004.

21

22

                                              CHIEF UNITED STATES DISTRICT JUDGE

23

24

25

26  ORDER – 14